**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| JAMES ADAMSON, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  4:23-cv-99 |
| | § | |
| LINCOLN LIFE ASSURANCE | § | |
| COMPANY OF BOSTON, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PRELIMINARY STATEMENT**

1.      Plaintiff JAMES ADAMSON, JR., hereinafter referred to as "Plaintiff," brings this ERISA action against the Lincoln Life Assurance Company of Boston Group Welfare Benefits Plan, in its capacity as Administrator of the Facebook, Inc. Long Term Disability Plan, hereinafter referred to as "Defendant".  Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff is covered under the policy by virtue of his employment with Facebook, Inc.

**PARTIES**

2.      Plaintiff is a citizen and resident of Springtown, Texas.

3.      Defendant is a properly organized business entity doing business in the State of Texas.

4.      The disability plan at issue in the case at bar was funded and

administered by Defendant.

  5.  Defendant is a business entity doing business in the Northern District of Texas.  Defendant may be served with process by serving its registered agent, Corporation Service Company; 211 East 7th Street, Suite 620, Austin, Texas  78701.

## JURISDICTION AND VENUE

  6.  This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question.  Specifically, Plaintiff brings this action to enforce his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

  7.  Venue in the Northern District of Texas is proper by virtue of Defendant doing business in the Northern District of Texas.   Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2).  Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*)  "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*).

See *Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993). The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant. *Varsic*, 607 F.2d at 248." See *Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007). Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States. See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 825-26 (5th Cir. 1996), citing *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir. 1994). Here, Defendant is "found" within the Northern District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

8.      At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. 06-066375.

9.      Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Facebook, with coverage beginning on September 23, 2019.

10.      Said policy became effective January 1, 2013.

11.      At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

3

12.    At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13.    Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14.    Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15.    Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. 06-066375 issued by Defendant.

16.    Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17.    Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18.    Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19.    In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20.    Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review.

4

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22.     Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23.     Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24.     When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25.     Defendant committed the following violations demonstrating its failure furnish a full and provide review:

    i.      Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
    ii.     Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
    iii.    Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);

iv.    Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

v.    Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);

vi.    Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);

vii.    Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);

viii.    Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);

ix.    Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

x.    Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xi.    Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xii.    Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

xiii.    Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26.    Defendant's violations of the regulations were not inadvertent or harmless.

27.    Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28.    Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

29.    In Texas, for disability insurance policies, certificates or riders offered, issued, renewed or delivered on or after February 1, 2011 said "discretionary clauses" are prohibited under 1701.062(a) Texas Insurance Code.

30.    Further, for disability insurance policies issued prior to February 1, 2011 that do not contain a renewal date, said discretionary clause prohibition applies after June 1, 2011 upon any rate increase or any change, modification or amendments on or

6

after June 1, 2011.

31.     Plaintiff contends that the Plan fails to give the Defendant said discretion as said discretionary language is prohibited under 1701.062(a) Texas Insurance Code.

32.     Pursuant to *Ariana M. v. Humana Health Plan of Texas*, 884 F.3d. 246, 249 (5th Cir. 2018), (overruling *Pierre v. Conn. Gen. Life Ins. Co.*, F2d. 1562 (5th Cir. 1991), the 5th Circuit has recently held that absent a valid grant of discretion, both the "interpretation of plan language" and "factual determinations" are to be reviewed by the court under a de novo standard.  Therefore, pursuant to *Ariana*, the court should review this matter de novo.

33.     ERISA does not preempt state bans on discretionary clauses because of the "savings clause."  ERISA preempts "any and all State laws insofar as they … relate to any employee benefit plan."  The "savings clause," however, preserves "any law … which regulates insurance…".  To fall within the savings clause, a state law must: Be "specifically directed toward entities engaged in insurance" and "substantially affect the risk pooling arrangement between the insurer and the insured."  *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

34.     Defendant's discretionary ban is therefore not preempted by ERISA and the Standard of Review for the Court in reviewing this action is de novo.

## ADMINISTRATIVE APPEAL

35.     Plaintiff is a 61-year-old man previously employed by Facebook, Inc. as a "Manager, Quality & Reliability Engineer."

36.     Manager, Quality & Reliability Engineer is classified under the Dictionary

of Occupational Titles as having a light exertional level. This occupation also has an SVP of 8 and is skilled work.

37.     This occupation was very demanding in that it required Plaintiff to plan and direct activities concerned with development, application, and maintenance of quality standards for industrial processes, material and products.

38.     Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on July 7, 2020.

39.     Plaintiff alleges that he became disabled on July 8, 2020.

40.     Plaintiff filed for short term disability benefits with Defendant.

41.     Short term disability benefits were approved and paid.

42.     Plaintiff filed for long term disability benefits through the Plan administered by the Defendant.

43.     The Plan defines "Disability" or "Disabled" as follows:

*"Disability" or "Disabled" means*
*i.     that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and*
*ii.     thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, situation in life, and physical and mental capacity.*

44.     The Plan defines "Own Occupation" as follows:

*"Own Occupation" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began.*

45.     The Plan defines "Any Occupation" as follows:

*"Any Occupation" means any occupation in the competitive workforce paying a gainful wage that You could perform considering your age, education, past work experience, and stage in life.*

46.    Long Term Disability benefits were approved from January 4, 2021 to January 24, 2022.

47.    The Plan provides for monthly benefits of $12,315.15.

48.    On January 25, 2022, Defendant terminated Plaintiff's long term disability benefits.

49.    Defendant's termination letter said the medical evidence lacked cognitive impairment under the Any Occupation definition and allowed Plaintiff 180 days to appeal this decision.

50.    Defendant's termination letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of his own or any occupation related to his medical conditions.

51.    Defendant's termination letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect his appeal.

52.    On February 28, 2022, Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

53.    Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

54.    Plaintiff submitted additional information including medical records to show that he is totally disabled from the performance of both his own and any other occupation as defined by the terms of the Plan.

9

55.     Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period.  Notably, the SSA's definition of disability is significantly more restrictive than Defendant's as SSA requires the claimant to be unable to work in "any occupation in the National Economy."

56.     Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

57.     On or about January 18, 2021, Defendant's paid consultant, Dwight A. Owens, M.D. (Dr. Owens), psychiatry and neurology, psychiatry, performed a peer review of Plaintiff's claim file.

58.     On or about February 12, 2021, Dr. Owens, prepared an addendum to his peer review of Plaintiff's claim file.

59.     On or about July 29, 2021, Defendant's paid consultant, Timothy Belliveau, Ph.D., ABPP (Dr. Belliveau), clinical neuropsychology, performed a peer review of Plaintiff's claim file.

60.     On or about January 8, 2022, Dr. Belliveau prepared an addendum to his peer review of Plaintiff's claim file.

61.     On or about May 18, 2022, Defendant's paid consultant, Eric M. Chavez, M.D. (Dr. Chavez), psychiatry, performed a peer review of Plaintiff's claim file.

62.     On or about July 27, 2022, Dr. Chavez prepared an addendum to his peer review of Plaintiff's claim file.

10

63.    Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

a.    The reviewers' opinions were infected by conflict and bias;

b.    The reviewers' conclusions lack foundation and are conclusory;

c.    The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d.    The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

e.    The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.    The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.    The reviewers failed to acknowledge that medications neither effectively resolved his pain nor were appropriate for long-term treatment of Plaintiff;

h.    The reviewers based their opinions on summary reports of other underqualified opinions; and

i.    The reviewers' conclusions were inconsistent with the weight of the evidence.

64.    Defendant's consultants completed their reports without examining Plaintiff.

65.    Defendant notified Plaintiff that Defendant upheld its original decision to terminate Plaintiff's claim for long term disability benefits.

11

66.     Defendant also notified Plaintiff that Plaintiff had exhausted his administrative remedies.

67.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

68.     The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

69.     A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

70.     More information promotes accurate claims assessment.

71.     Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

72.     Plaintiff has now exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

73.     Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

74.     Plaintiff suffers from major depressive disorder (MDD); and anxiety disorder.

75.     Treating physicians document continued chronic pain, as well as weakness.

76.     Plaintiff's treating physicians have opined that Plaintiff is unable to work.

77.    Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

78.    Plaintiff's multiple disorders have resulted in restrictions in activity, and have significantly curtailed his ability to engage in any form of exertional activity.

79.    Physicians have prescribed Plaintiff with multiple medications in an effort to address his multiple symptoms.

80.    However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

81.    Plaintiff's documented pain is so severe that it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

82.    Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

83.    The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

84.    As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

85.    However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits.

**DEFENDANT'S CONFLICT OF INTEREST**

86.    At all relevant times, Defendant has been operating under an inherent and

structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

87.    Defendant's determination was influenced by its conflict of interest.

88.    Defendant's reviewing experts are not impartial.

89.    Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

90.    Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

91.    Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

92.    Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

93.    Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## <u>COUNT I:</u>

## <u>WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132</u>

94.    Plaintiff incorporates those allegations contained in paragraphs 1 through 93 as though set forth at length herein.

95.    Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

14

a.     Plaintiff is totally disabled, in that he cannot perform the material duties of his own occupation, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow;

b.     Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c.     Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d.     Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

96.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 95 above.

97.     By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A.     Grant Plaintiff declaratory relief, finding that he is entitled to all past due long term disability benefits yet unpaid;

15

B.      Order Defendant to pay past due long term disability benefits retroactive to January 25, 2022 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.      Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D.      Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E.      For such other relief as may be deemed just and proper by the Court.

Dated:  Houston, Texas
           February 1, 2023

                                        Respectfully submitted,

                                        MARC WHITEHEAD & ASSOCIATES,
                                        ATTORNEYS AT LAW L.L.P.


                                By:      _/s/ Madison Tate Donaldson_____
                                         Madison Tate Donaldson
                                                Tex. Bar No. 24105812
                                                Fed. I.D. No. 3151467
                                                madison@marcwhitehead.com
                                         Selina Valdez
                                                Tex. Bar No. 24121872
                                                Fed. I.D. No. 3633062
                                                selina@marcwhitehead.com
                                         Marc S. Whitehead
                                                Tex. Bar No. 00785238
                                                Fed. I.D. No. 15465
                                                marc@marcwhitehead.com

J. Anthony Vessel
    Tex. Bar. No. 24084019
    Fed. I.D. No. 1692384
    anthony@marcwhitehead.com
Britney Anne Heath McDonald
    Tex. Bar. No. 24083158
    Fed. I.D. No. 2621983
    britney@marcwhitehead.com

403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
JAMES ADAMSON, JR.